UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSIE CAMPBELL, III,<br>    *Plaintiff*,<br><br>v.<br><br>KRISTINE BARONE *et al.*,<br>    *Defendants*. | No. 3:22-cv-00296 (JAM) |

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Jessie Campbell, III, is a prisoner in the custody of the Connecticut Department of Correction (DOC). He has filed a complaint *pro se* and *in forma pauperis* under U.S.C. § 1983 against numerous DOC officials alleging violations of his rights under the Eighth and Fourteenth Amendments. Because Campbell has failed to state a plausible claim for relief under federal law, I will dismiss the complaint without prejudice.

### BACKGROUND

Campbell was transferred to the MacDougall-Walker Correctional Institution (MacDougall) in July 2021, after spending approximately 14 years at the Northern Correctional Institution on death row.[1] Upon his transfer to MacDougall, Campbell was placed under "Special Monitoring" status.[2] Campbell alleges that he was not afforded a hearing or any similar form of due process prior to his placement on Special Monitoring, which he contends was in violation of his rights under the Due Process Clause of the Fourteenth Amendment.[3]

Campbell suffers from a "disorder" which "stops his concentration, affects his interpretations of reality," and "affects his mood and personality."[4] His time spent on death row

---

[1] Doc #1 at 5 (¶ 1).
[2] *Id.* at 6 (¶ 7).
[3] *Id.* at 7-8, (¶¶ 11, 15).
[4] *Id.* at 5 (¶¶ 2, 3).

1

has further deteriorated his mental health.[5] DOC psychiatrists have officially diagnosed Campbell with antisocial and schizotypal personality disorders.[6] Campbell also has ventricular hypertrophy (an enlarged heart).[7] This condition results in chest pains, heart palpitations, and difficulty breathing.[8] Campbell contends that his Special Monitoring status has exacerbated both these conditions, causing him to suffer suicidal ideations, loss of appetite, and obsessive thoughts.[9]

At MacDougall, Campbell has requested, to no avail, a one-on-one consultation with a mental health specialist to collaboratively create a specific treatment plan for his mental illnesses.[10] In response to Campbell's requests, Warden Kristine Barone and Dr. Pieri noted that Campbell was regularly seeing his designated mental health clinician, and advised him that he could make a specific request for medication if he so desired.[11] Campbell has also, to no avail, requested additional outdoor recreation time – an accommodation which he believes would improve his mental health and reduce his chest pains.[12] Campbell contends that it is unreasonable for DOC officials to deny him this accommodation, since he has no history of disciplinary infractions.[13] In denying his requests for additional recreation time, Warden Kristine Barone has similarly advised Campbell that he is provided daily recreation either outside or within his housing unit, as is consistent with what is afforded similarly-classified inmates.[14]

---

[5] *Id.* at 5, 7 (¶¶ 2, 10-11).
[6] Doc. #1-2 at 15.
[7] Doc. #1 at 20 (¶¶ 51, 53).
[8] *Id.* at 5, 20 (¶¶ 5, 54).
[9] *Id.* at 6 (¶ 7).
[10] Doc. #1-1 at 4.
[11] Doc. #1-1 at 4, 9-10.
[12] Doc. #1 at 17 (¶ 46); Doc. #1-2 at 7-8.
[13] Doc. #1 at 17 (¶ 46).
[14] Doc. #1-1 at 4; Doc. #1-2 at 7.

Campbell has also repeatedly requested chest pain treatment from various health officials at MacDougall.[15] On September 28, 2021, Campbell received a chest x-ray from Dr. Francesco Lupis, which appeared to be regular.[16] On October 7, 2021, Campbell had an appointment with Henry Mushi, RN, where he complained of continuing chest pains and requested an electrocardiogram (EKG).[17] Mushi conducted the EKG, which appears to have showed abnormalities, and notified the doctor on call to schedule a follow-up appointment.[18] During a follow-up appointment on November 18, 2021, Dr. Lupis noted that Campbell was still experiencing chest pains, ordered "blood work" and noted that he would "contact mental health to see if medication is appr[o]priate" in response to Campbell's complaints of anxiety.[19]

Campbell contends that prison officials have been deliberately indifferent to his need for medical treatment and that current limitations on his outdoor recreation time are cruel and unusual, in violation of his Eighth Amendment rights.[20] Campbell also notes, in passing, that defendants "discriminate" against him.[21]

He names as defendants seven identified individuals: Warden Kristine Barone, Captain Bishop, Acting District Administrator Guadarrama (misspelled as Guadarama), District Administrator Rodriguez, Dr. Pieri, Dr. Francesco Lupis, and Henry Mushi RN.[22] The complaint also names three medical professionals—Rob, Julio, and an indecipherable "V. Lpn"—as well as

---

[15] Doc. #1 at 13-16 (¶¶ 26-44).
[16] Doc. #1-1 at 15-16.
[17] Doc. #1 at 14 (¶ 30); Doc. #1-1 at 18-20.
[18] Doc. #1-1 at 18-20.
[19] Doc. #1-2 at 15-17.
[20] Doc. #1 at 17 (¶ 46).
[21] *Id.* at 6 (¶ 8).
[22] *Id.* at 1.

two John Doe defendants.[23] Campbell seeks compensatory, punitive, and nominal damages.[24] He also requests injunctive relief against all defendants.[25]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[26] Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Named defendants not alleged to be personally involved*

Campbell names several defendants—Rob, Julio, and "V. Lpn"—for whom he provides no details on alleged wrong acts. "It is well settled that, in order to establish a defendant's

---

[23] *Ibid.*
[24] *Id.* at 11.
[25] *Id.* at 12.
[26] Unless otherwise noted, this ruling omits all internal quotation marks, citations, brackets, and other alterations in its quotations and citations of case decisions.

individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Campbell has not demonstrated that any of these defendants acted to deny him his constitutional rights. Accordingly, I will dismiss the claims against defendants Rob, Julio, and "V. Lpn."

### *John Doe defendants*

Campbell also identifies two John Doe defendants who appear to be medical staff at MacDougall. Campbell fails to allege any "personal involvement" by these defendants "in alleged constitutional deprivations" as required by § 1983. *See Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021). Therefore, I will dismiss the claims against the two Doe defendants.

### *Fourteenth Amendment procedural due process*

To establish a claim of a violation of procedural due process under the Fourteenth Amendment, a plaintiff must show that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *See Ruggiero v. Fischer*, 807 Fed. App'x 70, 73 (2d Cir. 2020).

Campbell alleges that prison officials afforded him no hearing—or any other form of due process—before placing him on Special Monitoring status. Given the alleged absence of any process, the sufficiency of Campbell's pleading turns on whether his complaint supports a finding that he has a liberty interest in remaining free of Special Monitoring status.

A prisoner may have a liberty interest protected under the Due Process Clause if the state has created such an interest in a statute or regulation and if the deprivation of that interest caused him to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). The "touchstone of the inquiry" into

whether there exists a protected, state-created liberty interest in "avoiding restrictive conditions of confinement" is "the nature of those conditions . . . in relation to the ordinary incidents of prison life." *Id.* at 223. In conducting an analysis of whether there exists a protected liberty interest, courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *Davis v. Barrett*, 576 F.3d 129, 134 (2d Cir. 2009).

Campbell alleges that he has been on Special Monitoring status since his transfer to MacDougall in July of 2021. By the time he filed his complaint in February 2022, he had therefore been under Special Monitoring for eight months. Restrictive confinement of such a duration would raise the specter of a possible liberty interest, and require a court to "develop[] . . . a detailed record of the conditions of confinement." *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004).

But Campbell fails to elaborate on what his Special Monitoring status entailed, or whether he even was put under restrictive confinement or segregated from the general prison population.[27] Other than an assertion that Special Monitoring was "restrictive," Campbell provides no other facts regarding the actual conditions of his confinement.

Administrative directives indicate that Special Monitoring inmates are managed "in accordance with general population standards" with enumerated exceptions pertaining to increased review of the inmate's communications, interactions, and disciplinary infractions.[28] On their own, I cannot find that these restrictions amount to an atypical and significant hardship compared with the baseline of ordinary incarceration. Increased supervision is an inherent part of incarceration—inmates are necessarily subject to a level of monitoring to which non-incarcerated

---

[27] Doc. #1 at 6 (¶ 7).
[28] *See* CONN. DEP'T. CORRS., *Restrictive Status*, A.D. 9.4(15)(C), available at https://portal.ct.gov/DOC/AD/AD-Chapter-9 [https://perma.cc/95DV-6WE4] (last accessed Oct. 5, 2022).

individuals could rightfully object. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 524-25 (1984) (finding that in the Fourth Amendment context, prisoners do not have an absolute right to privacy in their individual cells). If Campbell's crime was so serious that he was once on death row, it would not be atypical for him to be subject to some form of heightened monitoring status.

The realities of Campbell's situation may certainly differ from what is in the administrative directives. *See, e.g.*, *Eckert v. Butricks*, 2021 WL 1239949 (D. Conn. 2021) (finding that where an inmate had been on Special Monitoring for more than 270 days and had been in a segregation program prior, he had a cognizable liberty interest in having his Special Monitoring status periodically reviewed). But Campbell bears the burden of alleging facts showing that *his* Special Monitoring classification would support such a finding. *See Davis*, 576 F.3d at 134 ("In determining whether [plaintiff] endured an atypical and significant hardship, . . . courts are required to examine the actual circumstances of confinement . . . and to identify with specificity the facts upon which their conclusions are based."). Since Campbell has failed to allege any details as to the actual conditions of his confinement and the particular burdens of his Special Monitoring status, he has not alleged sufficient facts to support a procedural due process claim under the Fourteenth Amendment.

### *Fourteenth Amendment Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. At a basic level, the Equal Protection Clause requires state actors to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).

In his complaint, Campbell alleges that he has been "discriminated" against. But the complaint does not go into any detail about how Campbell was treated differently from similarly situated individuals. Accordingly, I will dismiss any equal protection claim to the extent that Campbell intended to raise such a claim by means of his passing reference to discrimination.

### *Eighth Amendment deliberate indifference*

Campbell alleges that "all defendants" were deliberately indifferent to his serious medical needs, which constituted cruel and unusual punishment in violation of the Eighth Amendment. When an inmate claims that a prison official violated the Eighth Amendment by providing inadequate care, he must demonstrate (1) that he was subject to an objectively serious risk of harm or serious medical need; and (2) that the defendant was recklessly indifferent to his medical needs. *See, e.g.*, *Spavone v. N.Y. Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (per curiam).

Campbell's complaint alleges that he is suffering from numerous mental illnesses, including depression and anxiety. His formal psychiatric evaluation concludes that Campbell shows evidence of schizotypal personality disorder with antisocial, narcissistic, and borderline traits. For purposes of this order, I will assume Campbell's mental health needs are serious enough to satisfy the objective prong under the Eighth Amendment. *See Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014) ("In the context of mental health needs, propensities to . . . exhibit severe depression or anxiety attacks have been viewed as sufficiently serious.").

Campbell also alleges recurring chest pain, as well as trouble breathing and heart palpitations.[29] Since Campbell plausibly alleges symptomology which often precedes a major

---

[29] Doc. #1 at 10 (¶ 23).

cardiac episode, I will also assume for purposes of this order that his chest pains are serious enough to satisfy the first prong. *See Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) ("[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard.").

The question is therefore whether Campbell can satisfy the second prong of the test, which requires he show the defendants acted with a subjectively reckless state of mind and were "actually aware" that Campbell would be seriously harmed if they did not act. *See Spavone*, 719 F.3d at 138. An inmate's "mere disagreement over . . . proper treatment" is not sufficient to support a finding of deliberate indifference. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Neither does simple negligence or carelessness akin to ordinary medical malpractice. *Ibid.* Rather, prison officials must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).

Campbell has made his Eighth Amendment claim against "all defendants." Accordingly, I will evaluate whether the claims can proceed against the seven remaining defendants in turn.

***District Administrator Rodriguez, Acting District Administrator Guadarrama, and Captain Bishop***

Campbell alleges that he has separately complained to Rodriguez, Guadarrama, and Bishop, explaining that he has a "disorder" requiring him to have "consistent recreation."[30] Campbell does not appear to have provided any other details about his medical condition to any of these three defendants. Campbell's generalized complaints to these defendants cannot support

---

[30] Doc. #1-1 at 5; Doc. #1 at 13 (¶ 36); *Id.* at 15 (¶ 46).

a finding that any of them knew enough about Campbell's medical situation to have concluded that he was at risk of serious harm.

Neither does Campbell offer any facts that demonstrate Rodriguez or Bishop were aware of his chest pains. While Campbell does mention his chest pains in a complaint dated October 11, 2021 that was processed by Guadarrama, he does so only in passing to justify his request for additional outdoor recreation time. But a single reference to chest pain, without more, is not enough to show that Guadarrama acted with reckless indifference in denying Campbell's request. *See Flemming v. Velardi*, 2003 WL 21756108, at *2 (S.D.N.Y. 2003) (chest pains, without additional heart problems, will not substantiate an Eighth Amendment claim). As such, I will dismiss Campbell's deliberate indifference claim against Guadarrama, Rodriguez, and Bishop.

### *Warden Kristine Barone*

Campbell also alleges that he wrote to Warden Kristine Barone on multiple occasions explaining that he has a "disorder" requiring a tailored mental health treatment plan and outdoor recreation every morning and every night.[31] Barone's written responses to Campbell indicate that he had access to daily recreation either outside or in his housing unit and recommended that he continue working with the mental health staff.[32] Campbell has not alleged any facts demonstrating that his existing treatment and recreation schedule was inadequate, other than that it was not the particular plan he wanted. Nor does he offer any facts showing that Warden Barone was aware that Campbell was at risk of serious harm when she denied his requests. Accordingly, I will dismiss Campbell's deliberate indifference claim against defendant Barone.

---

[31] Doc. 1 at 9 (¶ 9); Doc. #1-1 at 4; Doc. #1-2 at 7.
[32] Doc. #1-1 at 4; Doc. #1-2 at 7.

### *Dr. Pieri*

Campbell alleges that he wrote to Dr. Pieri multiple times requesting additional neurological testing and a tailored mental health treatment plan. Dr. Pieri responded to at least some of those complaints by directing Campbell to go to "medical" to request specific testing (Dr. Pieri was a supervising psychologist) and noting that Campbell was already being seen regularly by a mental health clinician.[33] Dr. Pieri further advised Campbell that if he felt unsafe or was experiencing a mental health crisis he should alert custody, and if he would like a medication referral he could either write or let his clinician know.[34] Another note on September 17, 2021 states that Campbell had been seen by a mental health clinician five times in the preceding three weeks and had attended several groups.[35]

Campbell appears to allege that Dr. Pieri was deliberately indifferent to his mental health needs by not providing the treatment he requested. Far from indifference, Dr. Pieri was responsive to Campbell's concerns, directing him towards additional resources. *See Horace v. Gibbs*, 802 Fed. App'x. 11, 14 (2d Cir. 2020) (finding no Eighth Amendment violation where the defendants had "attended to" the plaintiff's medical conditions and "examined and treated" him for his complained-of ailments). Campbell alleges no facts to show that his existing treatment plan was inadequate, or that Dr. Pieri acted with knowledge of any danger of harm to Campbell if he continued with the treatment he was then receiving. Accordingly, I will dismiss the claim against Dr. Pieri.

---

[33] Doc. #1-1 at 9-10.
[34] *Id.* at 10.
[35] Doc. #1-3 at 1.

*Dr. Francesco Lupis*

Campbell went to see Dr. Lupis at least twice in Fall of 2021 with complaints about his recurring chest pain.[36] On September 28, Dr. Lupis ordered an x-ray, the findings of which appeared to be normal.[37] During a follow-up appointment on November 18, Dr. Lupis ordered additional blood work done and noted that he planned to contact mental health to see if medication for Campbell was appropriate.[38]

The facts do not show that Dr. Lupis was indifferent to Campbell's health concerns, as he took follow-up actions and looked into additional treatment options for Campbell. Nor do they demonstrate that Dr. Lupis was aware of a risk of serious harm to Campbell—the x-ray results appeared normal. Other than alleging that Dr. Lupis did not give him the specific care requested, Campbell provides no other facts showing that Dr. Lupis's actions evince reckless indifference. Accordingly, I will dismiss the deliberate indifference claim against Dr. Lupis.

*Henry Mushi, RN*

Campbell indicates that he told Mushi about his persistent chest pains at some point in October of 2021. The attached summary of Campbell's visit with Mushi on October 7 indicates that in response to Campbell's request, Mushi conducted an EKG and notified Dr. Lupis, who scheduled a follow-up appointment with Campbell the next day.[39] Again, the facts alleged demonstrate that Mushi was aware of Campbell's chest pain, but they also show that Mushi took active steps in response to Campbell's complaint by ordering an EKG test and scheduling a follow-up appointment with the doctor on call. Mushi's actions do not support a plausible claim

---

[36] Doc. # 1-1 at 15-16; Doc. #1-2 at 15-17.
[37] Doc. #1-1 at 15.
[38] Doc. #1-2 at 17.
[39] Doc. #1-1 at 18-20.

12

for reckless indifference. Accordingly, I will dismiss the deliberate indifference claim against Mushi.

Campbell's complaint clearly demonstrates that he disagreed with prison officials' assessment of what care he required. It does not, however, allege any facts showing that any of the defendants acted with a subjective state of mind to violate Campbell's constitutional rights. I therefore cannot find that the complaint states a claim under the Eighth Amendment with regards to Campbell's medical needs.

### *Eighth Amendment conditions of confinement*

Campbell also alludes to the fact that his inability to access regular outdoor recreation amounted to unconstitutional conditions of confinement. To properly plead a conditions of confinement claim under the Eighth Amendment, an inmate must, as an initial matter, allege that some aspect, or aspects, of his or her confinement denies him or her the "minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

The Second Circuit has consistently held that prisoners have a right to a "meaningful opportunity for physical exercise." *McCray v. Lee*, 963 F.3d 110, 120 (2d Cir. 2020). While the "routine denial of outdoor exercise could rise to the level of an Eighth Amendment violation," denial of outdoor recreation does not amount to a "per se violation of the Eighth Amendment, particularly where that denial was limited in duration." *Gawlik v. Quiros*, 2022 WL 2065042, at *7-8 (D. Conn. 2022). In his complaint, Campbell alleges that prison officials do not permit him to participate in twice daily outdoor recreation at morning and at night.[40] However, from the complaint, it appears that Campbell did have access to daily recreation, either outside or in his housing unit.[41] The right to outdoor exercise does not include the right to twice-daily outdoor

---

[40] Doc. #1-1 at 4-5, 7, 27, 30; Doc. #1-2 at 7-8, 10-12.
[41] Doc. #1-1 at 4; Doc. #1-2 at 7.

exercise. Because Campbell has not alleged that he has been denied access to any exercise or outdoor space, I will dismiss his Eighth Amendment conditions of confinement claim.

## CONCLUSION

The Court DISMISSES all claims without prejudice to the filing of an amended complaint that overcomes the concerns stated in this ruling within 30 days of this order. The Clerk of Court shall close this case subject to re-opening in the event that Campbell timely files an amended complaint.

It is so ordered.

Dated at New Haven, Connecticut this 5th day of October 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge